IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VLADIMIR GUSINSKY REV. TRUST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) Case No. _____ |
| Plaintiff, | ) ) JURY TRIAL DEMANDED |
| v. | ) ) CLASS ACTION |
| ROWAN COMPANIES PLC, WILLIAM E. ALBRECHT, THOMAS P. BURKE, THOMAS R. HIX, JACK B. MOORE, SUZANNE P. NIMOCKS, THIERRY PILENKO, JOHN J. QUICKE, TORE I. SANDVOLD, and CHARLES L. SZEWS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by its undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 8, 2018 (the "Proposed Transaction"), pursuant to which Rowan Companies plc ("Rowan" or the "Company") will be acquired by Ensco plc ("Ensco").

2. On October 7, 2018, Rowan's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Ensco. Pursuant to the terms of the Merger Agreement, Rowan's shareholders will receive 2.215 shares of Ensco Class A common stock for each share of Rowan stock they

own.

3. On October 30, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Rowan common stock.

9. Defendant Rowan is a public limited company organized under the laws of England and Wales and maintains its principal executive offices at 2800 Post Oak Boulevard,

Suite 5450, Houston, Texas 77056. Rowan's common stock is traded on the NYSE under the ticker symbol "RDC." Rowan is a party to the Merger Agreement.

10. Defendant William E. Albrecht is a director of the Company

11. Defendant Thomas P. Burke is a director of the Company.

12. Defendant Thomas R. Hix is a director of the Company.

13. Defendant Jack B. Moore is a director of the Company.

14. Defendant Suzanne P. Nimocks is a director of the Company.

15. Defendant Thierry Pilenko is a director of the Company.

16. Defendant John J. Quicke is a director of the Company.

17. Defendant Tore I. Sandvold is a director of the Company.

18. Defendant Charles L. Szews is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of Rowan (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of October 5, 2018, there were approximately 128,203,716 shares of Rowan common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others: (i)

3

whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

27.     Rowan is a global provider of offshore contract drilling services to the oil and gas industry in the ultra-deepwater and shallow water market, with a focus on high-specification and harsh-environment jack-up rigs and ultra-deepwater drillships.

28.     Rowan operates in three segments: (i) Deepwater; (ii) Jack-ups; and (iii) Saudi

Aramco Rowan Offshore Drilling Company ("ARO"), Rowan's 50/50 joint venture with Saudi Aramco Development Company ("Saudi Aramco").

29. The Company's Deepwater segment includes four ultra-deepwater drillships.

30. The Company's Jack-ups segment is currently comprised of twenty-one self-elevating jack-up rigs and includes the impact of the various arrangements with ARO.

31. ARO owns a fleet of seven self-elevating jack-up rigs, including two jack-ups that were sold to ARO by Rowan effective October 1, 2018, for operation in the Arabian Gulf for Saudi Aramco.

32. On October 7, 2018, Rowan's Board caused the Company to enter into the Merger Agreement with Ensco.

33. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Rowan's shareholders, they will receive 2.215 shares of Ensco Class A common stock for each share of Rowan stock they own.

34. According to the press release announcing the Proposed Transaction:

> Ensco plc (NYSE: ESV) and Rowan Companies plc (NYSE: RDC) jointly announced today that the companies have entered into a definitive transaction agreement under which Rowan will combine with Ensco in an all-stock transaction. The definitive transaction agreement was unanimously approved by each company's board of directors. The Saudi Aramco partner to the ARO Drilling joint venture has consented to the combination between Rowan and Ensco.
>
> Under the terms of the transaction agreement, Rowan shareholders will receive 2.215 Ensco shares for each Rowan share. Upon closing, Ensco and Rowan shareholders will own approximately 60.5% and 39.5%, respectively, of the outstanding shares of the combined entity. There are no financing conditions for this transaction.
>
> The combined company expects to realize annual pre-tax expense synergies of approximately $150 million, with more than 75% of targeted synergies expected to be realized within one year of closing. As a result, the transaction is projected to be accretive to cash flow per share in 2020 following an anticipated closing in

the first half of 2019. . . .

Financial Highlights

The combined entity is expected to generate future revenue growth opportunities as it capitalizes on an expanded, high-quality fleet serving a larger customer base across a wider geographic footprint. Estimated annual expense savings of $150 million are expected to be realized primarily from corporate and regional overlaps, supply chain efficiencies as well as the standardization of systems, policies and procedures across the combined organization. Based on these anticipated annual savings, the planned combination is expected to be accretive to cash flow per share annually for the combined entity beginning in 2020.

The combined company's balance sheet is expected to have liquidity of approximately $3.9 billion, including $1.9 billion of cash and short-term investments, providing the new entity with the financial flexibility to continue investing in the fleet and innovations aimed at improving drilling efficiencies. The combined company's credit profile will benefit from increased scale and significantly enhanced diversification across regions, rig types, customers and expertise due to the diverse makeup of its respective businesses. The total estimated revenue backlog for the combined company is approximately $2.7 billion, excluding ARO Drilling's substantial backlog which is unconsolidated. Based on the closing price of each company's shares on 5 October 2018, the estimated enterprise value of the combined company is $12.0 billion.

Governance

Carl Trowell will become the combined company's Executive Chairman, Tom Burke will serve as President and Chief Executive Officer, and Jon Baksht will serve as Senior Vice President and Chief Financial Officer. The remaining executive management team for the combined company will be named at a later date and will comprise executives from both Ensco and Rowan. Effective upon closing, the combined company's board of directors will include Carl Trowell and Tom Burke, plus five additional members from Ensco's current board and four additional members from Rowan's current board.

The combined company will be domiciled in the United Kingdom, where both Ensco and Rowan are currently domiciled, and senior executive officers will be located in London and Houston.

Conditions and Timing

The transaction is subject to approval by the shareholders of Ensco and Rowan and regulatory authorities, as well as other customary closing conditions. In addition, the transaction will be subject to court approval pursuant to a UK court-sanctioned scheme of arrangement. The transaction is not subject to any financing

conditions. Ensco and Rowan intend to file a joint proxy statement with the Securities and Exchange Commission as soon as possible. The companies anticipate that the transaction will close during the first half of 2019.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

35. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

36. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

37. The Proxy Statement omits material information regarding the Company's and Ensco's financial projections, as well as the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

38. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate EBITDA; and (ii) all line items used to calculate unlevered free cash flow.

39. With respect to Ensco's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate EBITDA; and (ii) all line items used to calculate unlevered free cash flow.

40. With respect to Goldman's Illustrative Discounted Cash Flow Analysis—Rowan Standalone, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.50% to 10.50%; (ii) the range of illustrative terminal values for Rowan; (iii) the amount of Rowan's net debt; (iv) the illustrative value for Rowan's ownership interest in ARO; and (v) the number of fully diluted outstanding Rowan ordinary shares.

41. With respect to Goldman's Illustrative Discounted Cash Flow Analysis—Ensco

Standalone, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 10.00% to 11.00%; (ii) the range of illustrative terminal values for Ensco; (iii) the amount of Ensco's net debt; and (iv) the number of fully diluted outstanding Ensco ordinary shares.

42. With respect to Goldman's Illustrative Discounted Cash Flow Analysis—Pro Forma Combined Company, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.75% to 10.75%; (ii) the unlevered free cash flows for the pro forma combined company used by Goldman in the analysis and all underlying line items; (iii) the range of illustrative terminal values for the pro forma combined company; (iv) the pro forma net debt for the combined company; (v) the illustrative value for Rowan's ownership interest in ARO; and (vi) the number of fully diluted outstanding shares of the pro forma combined company.

43. With respect to Goldman's Illustrative Contribution Analysis, the Proxy Statement fails to disclose: (i) the number of fully diluted outstanding Rowan ordinary shares and Ensco ordinary shares; and (ii) the net debt of Rowan and Ensco.

44. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. Additionally, the Proxy Statement fails to disclose whether the Company entered

into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

46. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

47. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Transaction; (ii) Rowan's Reasons for the Transaction; Recommendation of the Rowan Board of Directors; (iii) Opinion of Financial Advisor to Rowan; (iv) Certain Unaudited Financial Forecasts Prepared by the Management of Ensco; and (v) Certain Unaudited Financial Forecasts Prepared by the Management of Rowan.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Rowan**

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Rowan is liable as the issuer of these statements.

51. The Proxy Statement was prepared, reviewed, and/or disseminated by the

Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

52. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

54. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

55. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Rowan within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Rowan and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

61. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 16, 2018          **THE KENDALL LAW GROUP, PLLC**

                                  By:  */s/ Joe Kendall*

**OF COUNSEL:**                   Joe Kendall (Texas Bar No. 11260700)
                                  jkendall@kendalllawgroup.com
**RIGRODSKY & LONG, P.A.**        Jamie J. McKey (Texas Bar No. 24045262)
300 Delaware Avenue, Suite 1220   jmckey@kendalllawgroup.com
Wilmington, DE 19801              3811 Turtle Creek Blvd., Suite 1450
Telephone: (302) 295-5310         Dallas, TX 75219
Facsimile: (302) 654-7530         Telephone: (214) 744-3000
                                  Facsimile: (214) 744-3015

**RM LAW**
1055 Westlakes Drive, Suite 300   *Attorneys for Plaintiff*
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305